Doug **BROWN** et al., Plaintiffs,

v.

Allen **L. DONIELSON**, United States Attorney for the Southern District of Iowa, Defendant.

Civ. No. 10-288-C-2.

United States District Court,
S. D. Iowa,
Central Division.

Nov. 22, 1971.

———◆———

Raymond Rosenberg, Gerald Levy, Martin R. Dunn, and Louis Lavorato, Des Moines, Iowa, for plaintiffs.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for defendant.

## MEMORANDUM OPINION.

HANSON, Chief Judge.

This memorandum opinion is predicated upon the plaintiff's attempt to join in the multitude of recent challenges, on constitutional grounds, to the validity of statutes compelling witnesses to testify while granting immunity from the use of such testimony in subsequent prosecutions.[1] The matter came on for hearing before the Court on June 23, 1971, at which time the Court denied all of the relief requested by the plaintiffs.[2] Their attack, however, raised issues sufficiently novel that the Court was then unable to locate a reported case in point and the Court then indicated that this memorandum opinion would follow. (To facilitate comprehension of the issues as they existed then before the Court, the balance of this opinion is written in the present tense.)

The Grand Jury for the Southern District of Iowa is now investigating pos-

[1]. See Zicarelli v. New Jersey State Comm. of Investigation, 55 N.J. 249, 261 A.2d 129 (1970), prob. jur. noted, 401 U.S. 933, 91 S.Ct. 916, 28 L.Ed.2d 213 (1971); Illinois Crime Investigating Comm. v. Sarno, 45 Ill.2d 473, 259 N.E.2d 267 (1970), cert. granted, 401 U.S. 935, 91 S.Ct. 918, 28 L.Ed.2d 214 (1971); Piccirillo v. State of New York, cert. den'd, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971); In re Kinoy, 326 F.Supp. 407 (S.D.N.Y.1971); Stewart v. United States, 440 F.2d 954 (9 Cir. 1971);

In Matter of Korman, Etc. 449 F.2d 32 (7 Cir. 1971).

[2]. Plaintiffs Mays and Scatino were granted immunity subsequently under the provisions of 18 U.S.C. Section 2514, and chose to testify before the Grand Jury. Plaintiff Brown, also granted immunity, refused to testify and attacked the constitutionality of Section 2514 in another action docketed as Misc. No. 1–59. The decision in that matter is reported sub nom., In Matter of Brown, D.C., 329 F. Supp. 422 (1971).

sible criminal violations in regard to gambling activities. Plaintiffs James Mays and Ralph Scatino were served separate subpoenas *ad testificandum* and did appear previously before the Grand Jury as directed. However, they declined on Fifth Amendment grounds to answer certain questions whereupon they were excused. Subsequently, each of the plaintiffs has been served with a subpoena *ad testificandum* commanding their appearance before the Grand Jury on June 23, 1971. On June 22, plaintiffs filed the instant complaint seeking declaratory and injunctive relief pursuant to 28 U.S.C. Sections 2201 and 2202, and the convening of a three-judge district court pursuant to 28 U.S.C. Sections 2282 and 2284. Plaintiffs allege that jurisdiction is conferred upon this Court by 28 U.S.C. Section 1331. Plaintiffs complain substantially as follows:

1) That they each intend to invoke their Fifth Amendment privilege against self-incrimination when questioned before the Grand Jury.

2) That they anticipate the Defendant will thereupon seek an order from this Court granting Plaintiffs' immunity pursuant to 18 U.S.C. Sections 6002, 6003 or, in the alternative, 18 U.S.C. Section 2514, and compelling each of them to testify before the Grand Jury.

3) That they anticipate being called back to testify before the Grand Jury.

4) That, should any of the plaintiffs continue to refuse to testify or answer any question upon the grounds that such testimony might tend to incriminate, they anticipate the Defendant will initiate proceedings to have such Plaintiffs punished for contempt of Court pursuant to 18 U.S.C. Section 401(3).

5) That the only applicable immunity statute for the crimes being investigated by the Grand Jury is 18 U.S.C. Sections 6002, 6003, which are repugnant to the Constitution for failure to provide immunity from prosecution co-extensive with the privilege against self-incrimination guaranteed by the Fifth Amendment.[3]

6) That they anticipate that the Defendant will proceed to offer immunity to Plaintiffs under 18 U.S.C. Section 2514[4] in order to avoid litigating the

---

3. This issue has been decided recently by the District Court for the Southern District of New York (*Kinoy, supra*) and the Seventh Circuit Court of Appeals (*Korman, supra*)—both holding the statute invalid, and by the Ninth Circuit Court of Appeals (*Stewart, supra*)—upholding the validity of the statute.
   In a very recent decision, the Court of Appeals for the Eighth Circuit concluded that so-called transactional immunity is required as to the questioning sovereign. The validity of Sections 6002 and 6003 was not before the Court of Appeals in that case. United States v. McDaniel, 449 F.2d 832 (1971).

4. Title 18, United States Code, Section 2514, provides:
   "Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. *No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence,* nor shall testimony so compelled be used as evidence in any criminal proceeding. \* \* \*" (Emphasis added.) Added Pub.L. 90–351, Title III, Section 802, June 19, 1968, 82 Stat. 216.
   Section 2516 enumerates, inter alia:
   " \* \* \*

contentions urged against 18 U.S.C. Sections 6002, 6003.[5]

7) That 18 U.S.C. Section 2514 is applicable only to investigations or charges under Chapter 119 of Title 18, "Wire Interception and Interception of Oral Communications".

8) That Section 259 of the Organized Crime Control Act of 1970, Public Law 91–452, 84 Stat. 922, amends or repeals 18 U.S.C. Section 2514, to the extent that it no longer provides transactional immunity but grants only the narrower "use" immunity as apparently provided in Sections 6002, 6003, and therefore now suffers from the same constitutional infirmities.[6]

This Court issued an order to show cause which came on for hearing on June 23, at which time Plaintiffs amended the complaint to include a prayer for a temporary restraining order. The United States Attorney orally moved to dismiss the complaint on the grounds that (a) no jurisdictional amount exists; (b) the challenge to the constitutionality of 18 U.S.C. Section 2514 is premature in that no case or controversy presently exists over application of the statute to the plaintiffs; and (c) Section 2514 remains in full force and effect and is constitutional.[7] At the conclusion of the hearing this Court dismissed the cause for each of the reasons urged by the Defendant.

## I—FEDERAL QUESTION JURISDICTION

*A—Subject Matter Jurisdiction:*

The Constitution itself does not give rise to an inherent injunctive power to prevent its violation by govern-

---

(c) * * * section 224 (bribery in sporting contests), * * * section 1084 (transmission of wagering information). * * *"

5. At the time that this Court issued the ruling discussed here, there was then pending before Division I of District Court for the Southern District of Iowa (the Hon. Roy L. Stephenson, then Chief Judge) an action entitled Bauer v. McLaren et al., 332 F.Supp. 723, wherein those plaintiffs challenged the constitutionality of Sections 6002 and 6003 in the same manner as Plaintiffs herein were proceeding. On September 20, 1971, Judge Stephenson (then Circuit Judge Sitting by Designation) entered a Memorandum and Order denying the plaintiffs' motion to convene a three-judge court, and sustaining the defendants' motion to dismiss for failure to state a claim upon which relief could be granted.

6. Section 259 of P.L. 91–452 reads in its entirety:
"In addition to the provisions of law specifically amended or specifically repealed by this title, any other provision of law inconsistent with the provisions of part V of title 18, United States Code (adding by title II of this Act), is to that extent amended or repealed."
Plaintiffs' contention is that Section 259 subordinates the authority of 18 U.S.C. Section 2514 to the scope of immunity provided in Section 6002 which provides:
"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
(1) a court or grand jury of the United States,

* * * * *

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, * * *"
(Emphasis added.)
Section 6003 establishes procedures for obtaining the immunity order.

7. The Government relies in part upon Section 227(a) of P.L. 91–452 which states:
"Section 2514 of title 18, United States Code, is repealed effective four years after the effective date of this Act."
A decision upon the merits of Plaintiffs' challenge to the present constitutionality of Section 2514 would apparently necessitate statutory interpretation of the seeming conflict between Sections 227(a) and 259 of P.L. 91–452. (This Court's ruling upon the issue of that interpretation is found at 329 F.Supp. 422.)

mental officials. But, it cannot be doubted today that the federal courts can exercise traditional equity powers under any general grant of jurisdiction to the federal courts by Congress. Cf. Crowell v. Benson, 285 U.S. 22, 56–61, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Jurisdiction over general federal question cases was conferred upon the federal courts in 1875.[8] The Supreme Court since that time has repeatedly implied that there exists injunctive relief in the courts for threatened or continuing constitutional violations. United States v. Lee, 106 U.S. 196, 218–223, 1 S.Ct. 240, 27 L.Ed. 171 (1882); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (Opinion of Harlan, J., concurring, p. 398, 91 S. Ct. 2005. And see Bell v. Hood, 71 F. Supp. 813 (S.D.Cal.1947).

*B—Jurisdictional Amount:*

Plaintiffs allege that the amount in controversy exceeds $10,000. The complaint sets forth no prayer for money damages in any amount, but as amended, sets forth prayers for injunctive relief and for a temporary restraining order. The question confronting the Court is simply whether a prayer for injunctive relief to restrain the defendant from exceeding his constitutional authority establishes federal question jurisdiction when the complaint specifies no particular allegations of the nature of the threatened injury nor prays for money damages.

The Constitution has no limitation on access to the federal courts based on an amount in controversy. Article III grants Congress the power to establish such inferior courts as it pleases. From this provision stems the theory that Congress can limit access to the courts which it creates, since it need not have created lower federal courts at all.[9] Jurisdiction over general federal question cases was not conferred upon the federal courts until 1875,[10] and the amount in controversy requirement has risen from an original $500 to the present $10,000.

In Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), individual citizens and others brought suit against city officials to enjoin the latter from interfering with rights of free speech and assembly, and from enforcing ordinances charged to be facially unconstitutional. The complaint alleged the requisite jurisdictional amount to be in controversy. After trial upon the merits, the District Court entered findings of facts and conclusions of law in favor of the plaintiffs. The Circuit Court of Appeals held the District Court had jurisdiction under Section 24(1) and (14) of the Judicial Code. The Supreme Court modified the decree and, as modified, affirmed in a 5–2 decision. The majority decision was expressed in three separate concurring opinions, none of which commanded more than two justices. However, it appears that all five of the majority agreed that the District Court would have jurisdiction under the Judiciary Code, Section 24(14) [now 28 U.S.C. Section 1343(3)]. The majority, however, declined to sustain jurisdiction under Section 24(1) [now 28 U.S.C. Section 1331], unable to agree upon the jurisdictional amount. Justice Roberts, with Justice Black concurring, declared:

"The wrongs of which respondents complain are tortious invasions of alleged civil rights by persons acting under color of state authority. It is true that if the various plaintiffs had brought actions at law for the redress of such wrongs the amount necessary to jurisdiction under Section 24(1)

---

8. Act of March 3, 1875, 18 Stat. 470.

9. Cary v. Curtis, 3 Howard 236, 44 U.S. 236, 11 L.Ed. 576 (1845); Lockerty v.

Phillips, 319 U.S. 182, 187–188, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

10. N. 8, supra.

would have been determined by the sum claimed in good faith. [Footnote omitted.] But *it does not follow that in a suit to restrain threatened invasions of such rights a mere averment of the amount in controversy confers* jurisdiction. In suits brought under subsection (1) a traverse of the allegation as to the amount in controversy, or a motion to dismiss based upon the absence of such amount, calls for substantial proof on the part of the plaintiff of facts justifying the conclusion that the suit involves the necessary sum. [Footnote omitted.] The record here is bare of any showing of the value of the asserted rights to the respondents individually. * * We conclude that the District Court lacked jurisdiction under Section 24 (1)." 307 U.S. at 507–508, 59 S.Ct. at 960. (Emphasis added.)

Justice Roberts then concluded that Section 24(14) applied only to cases arising under the Privileges and Immunities clauses. 307 U.S. at 510–515, 59 S.Ct. 954.

Justice Stone, in an opinion concurred in by Justice Reed, argued that the Congressional history of the Civil Rights Act of 1871 read together with the histories of the 1875 and 1911 judiciary acts, necessitated the conclusion that, under the Due Process clause, Section 24(14) required no jurisdictional amount,[11] and that the jurisdictional amount was not necessary in every case under Section 24(1):

"Since all of the suits thus authorized are suits arising under a statute of the United States to redress deprivation of rights, privileges and immunities secured by the Constitution, all are literally suits 'arising under the Constitution or laws of the United States.' But it does not follow that in every such suit the plaintiff is required by § 24(1) of the Judicial Code to allege and prove that the constitutional immunity which he seeks to vindicate has a value in excess of $3,-000. There are many rights and immunities secured by the Constitution, of which freedom of speech and assembly are conspicuous examples, which are not capable of money valuation, and in many instances, like the present, no suit in equity could be maintained for their protection if proof of the jurisdictional amount were prerequisite. * * * " 307 U.S. at 529, 59 S.Ct. at 970.

■ Of course, today, no jurisdictional minimum is required in cases brought under 28 U.S.C. Section 1343. Plaintiffs have not urged that as a basis of jurisdiction in this case.

A year before *Hague*, the Supreme Court had declared in a damage action that, "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). In *Hague*, Justice Roberts apparently approved the good faith test as being conclusive in damage actions but not in suits for injunctions. The question remains: How is the amount in controversy determined in suits not seeking money damages?

A similar question in another context has arisen in consideration of damage actions wherein the claims have consisted nearly entirely of unliquidated damages. The First and Fifth Circuits have held that the district courts have the power to value a plaintiff's claim and dismiss the case if it reasonably appears that the plaintiff cannot recover in excess of the jurisdictional amount. Turner v. Wilson Line, 242 F.2d 414 (1 Cir. 1957); Leehans v. American Employers Ins. Co., 273 F.2d 72 (5 Cir. 1959). The rule in the Second and Third Circuits appears to be that, when unliquidated

11. 307 U.S. at 532, 59 S.Ct. 954.

damages are sought, the district court, except in flagrant cases, should permit the case to proceed rather than attempt to decide the jurisdictional issue in a way that may deprive the claimant of the ordinary incidents of a trial. Wade v. Rogala, 270 F.2d 280 (3 Cir. 1959); Deutsch v. Hewes Street Realty Corp., 359 F.2d 96 (2 Cir. 1966).

The latter approach would seem to accord better with the reasoning behind the sanctions of Paragraph (b) added to Section 1331 in 1958. At least one court has suggested that in actions at law where trial by jury is a matter of right under the Seventh Amendment, the problem of valuation is inextricably bound up with the merits of the case and should be submitted to the jury. Shaffer v. Coty, Inc., 183 F.Supp. 662, 666–667 (S.D.Cal.1960).

In suits for injunction between private parties, one party may have more to lose than the other. When one searches the reported cases it is unclear whether the plaintiff test is law. Mississippi & Missouri R. R. v. Ward, 67 U.S. (2 Black) 485, 492, 17 L.Ed. 311 (1863); Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174 (1915); Ronzio v. Denver & R.G.W.R., 116 F.2d 604, 606 (10 Cir. 1940).

Professor Wright views the good faith and legal certainty tests as semantic variants of each other when he notes, "unless it appears to a legal certainty that plaintiff cannot recover the sum for which he prays, how can it be held that his claim for that sum is not in good faith?" [12]

It has been well recognized that the equity powers of the federal courts are not proscribed as narrowly as the courts' authority in actions at law. Furthermore, the Supreme Court has distinguished between the issue of jurisdiction and that of the existence of a claim upon which relief may be granted in damage actions. Bell v. Hood, *supra*. There, the plaintiff claimed money dam-

ages for alleged violations of the Fourth Amendment and of the Fifth Amendment Due Process clause, alleging federal question jurisdiction. The District Court dismissed for lack of jurisdiction. The respondents argued that since the claim established a state cause of action in tort, there could be no question rising under the Constitution or laws of the United States. The Supreme Court commenced its decision by ruling that a plaintiff may determine upon what theory he will pitch his claim. If he decides to rely on federal law and his claim based on that law is not frivolous or a sham, but, in an orderly statement, a right or immunity created by the Constitution or laws of the United States appears as an essential element, *then jurisdiction is well founded* and judgment for or against the plaintiffs should be on the merits. 327 U.S., at 681–682, 66 S.Ct. 773. The Court then ruled that federal *jurisdiction* exists for adjudicating a claim for money arising from violations of the Fourth Amendment and the Fifth Amendment Due Process Clause. *Id.*, at 683–684, 66 S.Ct. 773. But the Court then remanded the case to the District Court to determine whether the complaint stated a cause of action upon which relief could be granted.

In an exhaustively researched opinion, the District Court found that "[i]f before the defendants committed the alleged acts complained of, plaintiffs here had commenced a suit in equity * * * this court would clearly have had the power to issue an injunction restraining defendants from exceeding the limits of their authority." 71 F.Supp. 813, 818–819 (S.D.Cal.1947). The Court then declined to follow the plaintiffs' argument that if there existed a right in equity to enjoin a threatened invasion of constitutional rights, it should follow that there was a federal cause of action at law for the damages after the threat became a reality. The Court recognized that whenever a federal officer or agent exceeds his authority, in so doing he no

---

12. Wright, Federal Courts, 95 (1963).

longer represents the government and loses the protection of sovereign immunity. The District Court then reasoned that in their individual capacities the defendants could be proceeded against by state action but that inasmuch as the prohibitions of the Fourth and Fifth Amendments do not apply to individual conduct, the Amendments could not be the basis of a federal cause of action against individuals.

Thus, the rule that emerged from Bell v. Hood was that federal courts could not grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments, but, the court specifically recognized that that issue was not determinative of the jurisdictional issue in the action at law, nor determinative of either the jurisdictional nor remedial issues in a suit in equity. The *Bell* rule remained undisturbed until June 21, 1971, when the Supreme Court held in the *Bivens* case, *supra*, that a complaint alleging injury consequent upon the violation of Fourth Amendment rights states a federal cause of action

upon which the petitioner is entitled to recover money damages.[13]

Certainly, one of the historic functions of injunctive or equitable relief is to prevent threatened injury to some person for which adequate compensation cannot be had at law. Board of Liquidation v. McComb, 92 U.S. (II Otto) 531, 541, 23 L.Ed. 623 (1875). And such relief is as clearly available when the threatened injury is the consequence of unconstitutional action by a governmental officer. *Id.* Thus, it seems clear that the determination of the amount in controversy in a suit for equitable or injunctive relief must be valued independently of whether damages in the jurisdictional amount may be had at law.

■ So, the Court is confronted in this case with Plaintiffs' bare allegation that the amount in controversy exceeds $10000, and with Justice Roberts' opinion in *Hague* that in "a suit to restrain threatened invasions of * * * rights a mere averment of the amount in controversy" does not confer jurisdiction.

13. The consequences of *Bivens* for Plaintiffs herein are not altogether clear. The only claim raised in *Bivens* was predicated upon the Fourth Amendment whereas Plaintiffs here rely upon the Fifth Amendment Self-Incrimination clause. On the other hand, Bell v. Hood also was predicated upon the Fourth Amendment and the Fifth Amendment Due Process clause. At first blush, it appears attractive to say that if the *Bell* rule should have been expanded to hold that there could be no recovery on a "self-incrimination" claim, then *Bivens* should be similarly expanded to overrule *Bell* and to hold for recovery on a "self-incrimination" claim.

But matters are not so simple. A cause of action under the Fourth Amendment or the Fifth Amendment Due Process clause is predicated upon officers of the government acting illegally, that is, outside their authority, and proximately causing injury to the aggrieved parties. In a "self incrimination" claim in the nature of the instant case, what is being challenged is not the defendant's abuse of power but rather his official discretion, his ministerial role. Of course should the United States Attorney flog the

plaintiffs here to elicit testimony that is constitutionally protected, this Court would have little hesitancy in expanding *Bivens* to provide for damages arising from any Fifth Amendment violation. But the United States Attorney is complying with his statutory authority and is seeking a ruling by the Court as to whether Plaintiffs must testify. It is this Court—the judiciary—who will decide whether Plaintiffs must testify or be penalized for failing to do so. Of course the fact that it is this Court that may erroneously interpret the Constitution in compelling testimony, rather than the United States Attorney, will hardly mitigate any injury suffered by the plaintiffs should it later be determined that their testimony was constitutionally protected. But, as Plaintiffs undoubtedly realize, they have little hope of obtaining any relief for injury suffered as a result of an erroneous judicial decision.

The most apparent conclusion to draw from these considerations is that of the District Court in *Bell*: that jurisdiction to hear a claim in equity and power to grant relief are independent of the power to grant relief in an ahtion at law for damages.

There are substantial policy reasons why Justice Roberts' opinion should not be extended to the instant case. In *Hague*, the plaintiffs were attempting to enjoin threatened reoccurrence of injurious acts to which they had been repeatedly and publicly subjected. Plaintiffs had no reason to conceal the nature of their injuries since what they were complaining of was interference with their rights to publicly assemble and speak. The crucial question so far as the Section 24(1) jurisdiction was whether the plaintiffs personally were being damaged in any amount by not being able to speak out.

Plaintiffs here allege that they have been called as witnesses before a federal grand jury investigating gambling activities. To the plaintiffs, privacy at this time is of the utmost importance—not merely privacy from the general eyes of the public before whom they may be degraded should charges be brought, but privacy as well from the inquiries of the grand jury and the prosecutor. Only the plaintiffs themselves know what transgressions they may have committed or upon how many separate occasions they have done so. If, ultimately, 18 U.S.C. Section 2514 does not provide them with the scope of immunity they seek, Plaintiffs risk injury in the nature of prison sentences, fines and/or possible forfeitures.[14] To require the plaintiffs to make a more specific showing that the amount of injury they anticipate exceeds the jurisdictional amount is to force them to reveal the very evidence which they believe to be incriminating and for which they fear that immunity will be inadequate.[15]

In the *Bauer* case, *supra*, Judge Stephenson expressed grave doubts as to whether the collateral effects of Sherman Antitrust Act penalties may be considered as part of the amount in controversy for the purpose of jurisdictional amount, citing Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934). The Supreme Court there ruled that in an injunction suit in federal court challenging the constitutionality of a state law which imposed license taxes on the plaintiff, where the issue was confined to the right of the State to collect the taxes and did not extend to the method of enforcement, the amount in controversy was the amount of the taxes due from the plaintiff and did not include the penalty or loss of business which payment of the tax would prevent. *Healy* was not cited or discussed in the *Red Cab Co.*, *Hague*, or *Bell* cases, supra. *Healy* may be distinguished from the instant action on several grounds,

14. Without in any way indicating what charges might be returned by the present or any future grand jury against these Plaintiffs, the Court notes that conviction upon a single count of violation of 18 U.S.C. Section 224 (bribery in sporting contests) carries a possible maximum penalty of a fine of $10,000 and imprisonment for five years; conviction upon a single count of violation of 18 U.S.C., Section 1084 (transmission of wagering information) carries a possible maximum penalty of a fine of $10,000 and imprisonment for two years. Then too, the Court must recognize that in these days, many accused must confront the use of the ubiquitous conspiracy charge, 18 U.S.C., Section 371, for which conviction on a single count carries a possible maximum penalty of a fine of $10,000 and imprisonment for five years.

The Supreme Court has held that a proceeding to forfeit a person's goods for an offense against the laws, though civil in form, and whether *in rem* or *in personam*, is a "criminal case" within the meaning of that part of the Fifth Amendment which declares that no person shall be compelled, in any criminal case, to be a witness against himself. Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

15. An *in camera* proceeding to determine the possible extent of penalties confronting Plaintiffs would appear to be equally unsatisfactory, for any decision by the Court would "tip Plaintiffs' hand" to the prosecutor to some degree. It must be remembered that exclusionary hearings *in camera* take place after the prosecutor already possesses the damaging evidence or confession.

but it is equally arguable that the rationale approved there should be applied here. In balancing all considerations this Court is in agreement with Judge Stephenson that remedies must be adjusted so as to grant necessary relief where federally protected rights have been invaded. Therefore, the Court believes that federal question jurisdiction as prescribed in Section 1331 has been satisfied by the plaintiffs, and accordingly withdraws that portion of the Order issued on June 23, 1971, dismissing the Complaint for failure to meet the jurisdictional amount.

## II—JURISDICTION: THE CASE OR CONTROVERSY REQUIREMENT

The Court is troubled by the anticipatory and contingent nature of Plaintiffs' allegations. What indeed is the nature of the controversy in its current state? The first contingency appears to be whether Plaintiffs will choose to claim their Fifth Amendment privilege to any interrogatories or will choose to answer all questions. Inasmuch as Plaintiffs Mays and Scatino have previously been called by the same Grand Jury and have refused to answer various questions, there perhaps need not be much speculation as to this occurring again. And inasmuch as the Defendant stated in the hearing that he intends to apply for immunity under 18 U.S.C. Section 2514, that matter now has some degree of certainty. But the alternatives that appear thereafter are many and the risk of threatened injury seems remote.

At the time of application by the Defendant for immunity, Plaintiffs may again raise all their constitutional challenges to Section 2514. This Court may then decide the constitutional issue in Plaintiffs' favor, or it may decide that the statute is constitutional and grant the immunity order, or the Court may defer the constitutional question altogether and grant the immunity order.

If the immunity order is granted Plaintiffs may then choose to respond or not respond to the questions. Assuming for the moment that Plaintiffs choose not to answer questions, the alternatives arise of whether the Defendant then seeks a citation of contempt. If the government does seek a contempt citation, Plaintiffs again have the opportunity to raise all the issues which they now seek to bring before the Court. Again, there are two possibilities: The Court may find the statute unconstitutional and refuse to find the Plaintiffs in contempt, or the Court may find the statute constitutional and find Plaintiffs in contempt. Further possibilities arise. The Plaintiffs may then submit to whatever penalty the Court imposes meanwhile seeking to appeal this Court's ruling.[16] Or the plaintiffs may elect to purge themselves and escape any penalty after having obtained an unfavorable decision to their challenge.

If we return to the point where immunity has been granted and assume now that plaintiffs choose to respond to the questions, what alternatives then appear? On one hand, no prosecution or forfeitures may occur, either because no information ultimately comes to the prosecutor's attention which would provide the basis for other charges or because the prosecutor continues to believe, as he urged at the hearing, that Section 2514 indeed provides full transactional immunity. On the other hand, the prosecutor may indeed initiate criminal or forfeiture proceedings for activities related to the subject transactions. Then again, plaintiffs may have the oppor-

16. Here, also, further contingencies appear. The Court may find Plaintiffs in contempt under 18 U.S.C. Section 401 and either this Court or the Court of Appeals may exercise discretion as to the imposition of penalties during the pendency of the appeal. Or, this Court might invoke the sanctions of 28 U.S.C. Section 1826, in which case Plaintiffs could not be admitted to bail pending determination of an appeal. And under either Section 401 or Section 1826, Plaintiffs would still have the opportunity to purge themselves should results of an appeal be against them.

tunity to raise Fifth Amendment issues, and the trial court may ultimately decide in their favor or not—or the defendants may be acquitted for failure of the proof.

██ The principles of justiciability perhaps have been set forth nowhere better than in Justice Frankfurter's concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149–174, 71 S.Ct. 624, 95 L.Ed. 817 (1951). To require a court to intervene in a decision of the executive, either on constitutional grounds or in the exercise of inherent equitable powers, something more than adverse personal interest is needed. The injury must be a wrong which directly results in the violation of a legal right.[17] Justice Frankfurter set forth three standards to determine the issue of "legal" injury:[18]

"(a) Will the action challenged at any time substantially affect the 'legal' interests of any person?

"(b) Does the action challenged affect the petitioner with sufficient 'directness'?

"(c) Is the action challenged sufficiently final?"

██ This Court believes that the third of Justice Frankurter's standards must be resolved against Plaintiffs here. Finality may have two meanings. Government action is "final" where the impact on a petitioner of a decision by the executive will at no future time become more conclusive, definite or substantial. "Finality" is also employed in a different sense, in reference to a judicial action not subject to subsequent revisory executive or legislative action. 341 U.S., at 154 n. 4, 71 S.Ct. 624; Cf. United States v. Ferreira, 54 U.S. (13 Howard) 40, 14 L.Ed. 42 (1851). Both concepts are of some concern here.

In the case of Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), witnesses were directed to appear and produce documents before a special examiner designated by the circuit court to hear testimony in a suit brought by the United States to enforce the Sherman Act. Upon refusal to submit the documents called for in subpoena, the government petitioned the circuit court for an order requiring compliance. The petition was granted and an appeal was then allowed to the Supreme Court. The appeal was dismissed for lack of jurisdiction, the court noting that finality would not occur until the court had imposed punishment upon an adjudication of contempt.

In Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the District Court denied motions to quash subpoenas *duces tecum,* and the petitioners sought review in the Court of Appeals. That court found itself without jurisdiction and dismissed the appeal; the Supreme Court granted certiorari and affirmed. The Court noted the historic deference to the Grand Jury and found that witnesses before the Grand Jury were involved in the "judiciary process" and that until they were found in contempt, their situation could not be severed from the proceedings of the Grand Jury.

Both of those cases involved the question of appellate jurisdiction to review rulings at *nisi prius,* whereas the instant case turns on whether the District Court's original jurisdiction is defeated by lack of a controversy.

The Supreme Court has stated on repeated occasions that the courts do not review constitutional issues until they have to. Parker v. Los Angeles County, 338 U.S. 327, 70 S.Ct. 161, 94 L.Ed. 144 (1949); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Opinion of Brandeis, J., concurring, 341, 56 S.Ct. 480 (1936). "In part, this practice reflects the tradition that courts, having final power, can exercise it most wisely by restricting themselves to situations in which decision is necessary. In part, it is founded on the practical wisdom of not coming prematurely or needlessly in conflict

---

17. *Id.,* at 151–152, 71 S.Ct. 624.

18. *Id.,* at 152–157, 71 S.Ct. at 638.

with the executive or legislature." Joint Anti-Fascist Refugee, *supra,* 341 U.S. p. 155, 71 S.Ct. p. 639. The Supreme Court has refused to consider the constitutionality of administrative regulations imposing a duty upon certain individuals until an order threatening sanctions has been issued to those who decline to comply. Parker v. Los Angeles County, *supra.*

The considerations of policy explored and found controlling in *Alexander, Cobbledick,* and *Parker* seem compelling here. The Court will continue its order entered at the hearing on June 23, 1971, dismissing the cause of action for lack of jurisdiction inasmuch as there is no present controversy.

Consequently, there is no occasion to rule on the merits of Plaintiffs' contentions and that portion of the order of June 23, 1971, will be withdrawn.