## STATE v. DR. JANE ELIZABETH HODGSON.

204 N. W. 2d 199.

February 2, 1973—No. 42966.

*R. Paul Sharood, Henry H. Cowie, Jr.*, and *Roy Lucas*, for appellant.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

*Deonne Parker, Lynn S. Castner*, and *R. Michael Wetherbee*, for Minnesota Civil Liberties Union, amicus curiae.

*Lawrence J. Hayes, Louis W. Brenner, William J. Hassing*, and *Maun, Hazel, Green, Hayes, Simon & Aretz*, for Minnesota Citizens Concerned for Life, Inc., and Drs. Fred E. Mecklenburg, Paul H. Andreini, Alex Barno, and John L. McKelvey, amici curiae.

PER CURIAM.

Defendant, Jane E. Hodgson, appeals from a conviction for performing an abortion in violation of Minn. St. 617.18. On the authority of Roe v. Wade, 410 U. S. 113, 93 S. Ct. 705, 35 L. ed. 2d 147 (1973), and Doe v. Bolton, 410 U. S. 179, 93 S. Ct. 739, 35 L. ed. 2d 201 (1973), we reverse.

Defendant is a physician duly licensed by the State of Minnesota, specializing in obstetrics and gynecology. In March 1970, a patient then 3 or 4 weeks pregnant contracted rubella. Because Dr. Hodgson was of the opinion there was a substantial likelihood the patient's unborn child would suffer a severe deformity as a result of the rubella, she and other physicians sought a Federal court injunction restraining the state from enforcing the

abortion statute. Unsuccessful in that effort, Dr. Hodgson performed an abortion on the patient in Miller Hospital, St. Paul, on April 29, 1970. The operation took place during the first trimester of the patient's pregnancy.

Dr. Hodgson was subsequently indicted for violation of Minn. St. 617.18. She was tried and convicted by the court without a jury. On November 20, 1970, the court imposed a jail sentence of 30 days which was stayed and she was put on probation without supervision for a period of 1 year.

Dr. Hodgson has challenged the constitutionality of § 617.18, in the trial court and in this court, citing as authority Roe v. Wade, 314 F. Supp. 1217 (N. D. Tex. 1970), and Doe v. Bolton, 319 F. Supp. 1048 (N. D. Ga. 1970). Four days after her case was argued, the appeals in the two cases cited were heard by the United States Supreme Court. They were decided on January 22, 1973, and govern the disposition of the matter here before us.

Minn. St. 617.18 provides as follows:

"Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to preserve her life, or that of the child with which she is pregnant, shall

(1) prescribe, supply, or administer to a woman, whether pregnant or not, or advise or cause her to take, any medicine, drug, or substance; or

(2) use, or cause to be used, any instrument or other means—

Shall be guilty of abortion and punished by imprisonment in the state prison for not more than four years or in a county jail for not more than one year."

That statute is described by the Supreme Court of the United States as similar to the Texas statute which it held unconstitutional in Roe v. Wade, *supra*.[1] In so far as it is applicable, the Texas abortion statute provides as follows:

---

[1] Roe v. Wade, 410 U. S. 113, 118, note 2, 93 S. Ct. 705, 709, 35 L. ed. 2d 147, 157 (1973).

Vernon's Ann. Tex. Pen. Code art. 1191 (1961).

"If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused."

Vernon's Ann. Tex. Pen. Code art. 1196 (1961).

"Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

In neither statute is an abortion authorized except to preserve the life of the mother or the child.

In Roe v. Wade, *supra*, the plaintiff was a pregnant unmarried woman who sought a declaratory judgment and injunction restraining the district attorney from enforcing the Texas abortion statutes. The lower court held the statutes to be in violation of the Ninth and Fourteenth Amendments of the United States Constitution and "void on their face." 410 U. S. 122, 93 S. Ct. 711, 35 L. ed. 2d 159. However, the court denied injunctive relief. Appeals and cross-appeals were thereupon taken to the United States Supreme Court.

With exceptions not here relevant, the Supreme Court affirmed the judgment of the district court, concluding that Article 1196 of the Texas Penal Code was unconstitutional and that the remainder of the statute "as a unit, must fall." 410 U. S. 166, 93 S. Ct. 733, 35 L. ed. 2d 184. The court based its decision on a violation of the patient's right of privacy found in the Fourteenth Amendment.

"This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions

upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy. The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. All these are factors the woman and her responsible physician necessarily will consider in consultation." 410 U. S. 153, 93 S. Ct. 727, 35 L. ed. 2d 177.

By way of summary, the Supreme Court concluded its decision with the following directive (410 U. S. 164, 93 S. Ct. 732, 35 L. ed. 2d 183) :

"1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."

The Georgia statute, held unconstitutional in Doe v. Bolton, *supra*, permitted an abortion only if one of the following conditions existed:

"(1) A continuation of the pregnancy would endanger the life of the pregnant woman or would seriously and permanently injure her health; or

(2) The fetus would very likely be born with a grave, permanent and irremediable mental or physical defect; or

(3) The pregnancy resulted from forcible or statutory rape." Ga. Code, § 26-1202 (1971).

In that proceeding, the plaintiff was a pregnant married woman who, together with various physicians, clergymen, and others sought a declaratory judgment that the Georgia abortion statutes were unconstitutional in their entirety. In affirming that part of the district court's decision which held invalid the provisions described above, the Supreme Court stated (410 U. S. 192, 93 S. Ct. 747, 35 L. ed. 2d 212):

"We agree with the District Court, 319 F. Supp., at 1058, that the medical judgment may be exercised in the light of all factors —physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit, not the disadvantage, of the pregnant woman."

In Roe v. Wade, *supra*, the court held that during the first trimester "the attending physician, in consultation with his patient, is free to determine, without regulation by the State,

that in his medical judgment the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State." 410 U. S. 163, 93 S. Ct. 732, 35 L. ed. 2d 183.

In the instant case, the facts bring Dr. Hodgson squarely within the constitutional protection enunciated in Roe v. Wade, *supra*. The abortion she performed occurred within the first trimester of pregnancy following consultation with her patient. At that point the abortion was a medical decision based on the doctor's professional judgment. The doctor assumed a responsibility which was properly vested in her at a time, and under circumstances, which precludes the state from claiming any compelling interest in interfering with the operation. Accordingly, the judgment of conviction is reversed.

Reversed.