**George W. NYBERG et al., Plaintiffs,**

v.

**The CITY OF VIRGINIA, MINNESOTA, et al., Defendants.**

**No. 5–73 Civ. 72.**

United States District Court, D. Minnesota, Fifth Division.

Aug. 10, 1973.

the member schools deleted the riflery exception.

Friedman & Friedman by Newton S. Friedman, Duluth, Minn., appeared for plaintiffs.

O'Leary, Trenti, Berger & Carey, Virginia, Minn., by Thomas H. Carey, appeared for defendants.

NEVILLE, District Judge.

Presented here for decision is the question whether a hospital owned and operated by the municipality of Virginia, Minnesota, can constitutionally prohibit licensed physicians on its staff from using the hospital facilities for the performance of abortions.

The facts are substantially without dispute. Plaintiffs allege and defendants do not deny that plaintiffs George W. and Nancy R. Nyberg are husband and wife as are William A. and Fern Arpi; that both couples have children; that plaintiff Rachel Arpi is the nineteen year old Arpi daughter; that plaintiff Nancy R. Nyberg has been advised by medical authority to avoid bearing more children and to desist from the use of contraceptive pills because of her emotional and physical condition; that plaintiffs James E. Williams and Melodie J. Wilson are single persons; that Dr. Charles J. Mock and Dr. Charles A. Tietz are physicians and staff members of the Virginia Municipal Hospital. All plaintiffs are residents and taxpayers of the city of Virginia, Minnesota. There is no allegation that any plaintiff is pregnant.

Plaintiffs assert that by the adoption of Resolution No. 2606 on February 5, 1973 and its reaffirmation on February 19, 1973 after hearing protests, the Virginia Hospital Commission proscribed the performance of abortions at the Virginia Municipal Hospital except when necessary to save the life of the mother. There is no contention that the Hospital Commission acted outside the scope of its authority. Plaintiffs further contend that defendants' actions result in infringement of their Constitutional rights guaranteed by the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the Federal Constitution and constitute interference with the doctor-patient relationship in restraint of the "free practice" of medicine. Redress is requested from the court under 28 U.S.C. §§ 1331, 1343 and the Civil Rights Acts 42 U.S.C. §§ 1981, 1983, 1985. Plaintiffs demand an injunction directing that defendants provide facilities necessary for the performance of abortions and allow physicians to perform such at their discretion; that Resolution No. 2606 be declared null and void and in violation of law; that defendant Kaye as administrator of the Virginia Municipal Hospital be required to establish procedures within 30 days to initiate and implement the court's directives; and that the plaintiffs be awarded costs and attorneys' fees. At a pretrial conference and in his brief plaintiffs' attorney withdrew the portion of the complaint requesting compensatory damages of $25,000 and thus no damages are or will be sought in this claimed class action in which plaintiffs purport to represent all others similarly situated.

Defendants have interposed an answer containing a general denial and specific challenges to plaintiffs' class action and to their standing to sue. They deny the existence of a basis for injunctive relief and also request dismissal and recovery of costs and disbursements. Defendants have lodged a statement of their view of the facts with the court which admits: that the Virginia Hospital Commission exists under authority of the Charter of the City of Virginia; that the City of Virginia owns the Virginia Municipal Hospital which was constructed with public funds and the land upon which it sits; that the Virginia Municipal Hospital has received and continues to receive public funding from both state and federal sources; that the Hospital Commission is vested with general powers and

duties including supervision and control of management policies; that the Commission members are the defendants named in the complaint; that Norman Kaye is the hospital administrator hired by the Commission; and that in accord with previous regulations and by Resolution No. 2606 (adopted 2/5/73 and reaffirmed 2/19/73) abortions "will only be permitted when required to save the life of the mother."

## JURISDICTION

█ The court need not decide whether it should assume jurisdiction over this case on the basis of 28 U.S.C. § 1331, particularly since the request for compensatory damages is stricken from the complaint. Jurisdiction does exist under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.[1] Though plaintiffs so assert, 42 U.S.C. § 1981 does not apply inasmuch as plaintiffs have alleged no discrimination of any sort as between different persons or classes. Neither does 42 U.S.C. § 1985 have any bearing on this case. There is no allegation of conspiracy, entry onto property or travel in disguise upon the highway. Section 1983, however, gives this court jurisdiction if plaintiffs have been deprived of their constitutional rights as a result of the administration of the Virginia Municipal Hospital by the Hospital Commission and defendant Kaye and if such action can be said to have been done under color of state law. Since there is no minimum amount in controversy required to prosecute a claim under 28 U.S.C. § 1343, it is clear that the amount involved is not a basis for objection to jurisdiction thereunder. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Brown v. Donielson, 334 F.Supp. 294 (D.Iowa 1971). Likewise it is clear that juris-

diction exists under 42 U.S.C. § 1983. Hathaway v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973); McCabe v. Nassau County Medical Center, 453 F.2d 698 (2d Cir. 1971); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968). See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L. Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). See also Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E. D.N.Y.1972), app. pending, 410 U.S. 922, 93 S.Ct. 1361, 35 L.Ed.2d 584 (1973); Y.W.C.A. v. Kugler, 342 F. Supp. 1048 (D.N.J.1972); McGarvey v. Magee-Women's Hospital, 340 F.Supp. 751 (W.D.Penn.1972); Steinberg v. Brown, 321 F.Supp. 741 (N.D.Ohio 1970); Doe v. Randall, 314 F.Supp. 32 (D.Minn.1970), aff'd sub nom, Hodgson v. Randall, 402 U.S. 967, 91 S.Ct. 1656, 29 L.Ed.2d 132 (1971); Babbitz v. McCann, 310 F.Supp. 293 (E.D.Wis. 1970).

## STANDING

█ Though defendants allege in their answer that none of the plaintiffs have standing to bring this suit, their counsel in his brief states he takes no serious issue with plaintiffs' standing. Nonetheless it is this court's view that parties may not by stipulation confer standing to be in this court. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), requires "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." To quote from Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20

---

1. 42 U.S.C. § 1983. Civil action for deprivation of rights

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

L.Ed.2d 947 (1968), "There [must be] a logical nexus between the status asserted and the claim sought to be adjudicated." The rule exists because "[t]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.* at 99, 88 S.Ct. at 1952.

The rights to be protected in cases of this sort are in part those which inure to pregnant women; it is clear that they would have standing. *E.g.,* Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Klein v. Nassau County Medical Center, 347 F.Supp. 496 (E.D.N.Y. 1972), app. pending, 410 U.S. 922, 93 S. Ct. 1361, 35 L.Ed.2d 584 (1973). The difficulty in this case, of course, is that there is no evidence that any of the female plaintiffs are in fact pregnant. Non-pregnant women present another standing issue entirely.

> "Although some of them may in the future become pregnant and may in such event desire an abortion . . . it is also possible that they will not become pregnant or that if they do they will, upon further reflection, decide for other reasons against an abortion. We need not explore the many other conditions that might preclude their gaining any stake or interest, such as change of domicile to another state, infertility, or the like. It is clear that any threat of harm to them is remote and hypothetical. Accordingly we hold that non-pregnant female plaintiffs in this category do not show a sufficient nexus or present a sufficiently concrete issue in an adversary setting to give them standing, and we affirm the district court's dismissal of the complaint as to plaintiffs claiming standing solely on the basis of their child-bearing age."

Abele v. Markle, 452 F.2d 1121, 1124 (2d Cir. 1971), stay granted, 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972).

See also Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Y.W.C.A. v. Kugler, 342 F. Supp. 1048 (D.N.J.1972); Steinberg v. Brown, 321 F.Supp. 741 (N.D.Ohio 1970); Doe v. Randall, 314 F.Supp. 32 (D.Minn.1970), aff'd sub nom., Hodgson v. Randall, 402 U.S. 967, 91 S.Ct. 1656, 29 L.Ed.2d 132 (1971). This court follows the reasoning of the *Abele* decision and refuses to allow standing solely on the basis of a woman's child-bearing age.

Practitioners of the medical profession also have constitutional interests in matters of this type. Their concerns are most trenchantly presented when they are confronted with criminal sanctions. See *e.g.,* Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Abele v. Markle, 452 F.2d 1121 (2d Cir. 1971) stay granted, 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972). Of course this civil case presents a somewhat different question but Y.W.C.A. v. Kugler, 342 F.Supp. 1048, 1055 (D.N.J.1972), indicates that physicians' allegation of a right to "freely practice medicine according to the highest medical standard" without arbitrary outside restraints and controls confers standing upon them because that contention is inextricably bound up with the privacy rights of women who seek abortions. In striking down the portion of the Georgia abortion statute which required multi-doctor concurrence in the decision to perform an abortion, the Supreme Court in Doe v. Bolton noted that the best clinical judgment of a single doctor should be sufficient. 410 U.S. at 199, 93 S.Ct. 739. Clearly then restraints imposed by non-professional Hospital Commissions should be carefully scrutinized. In addition to the points raised by *Kugler* and *Doe,* this court concludes that physicians also have a direct economic interest in providing abortion services. Therefore they must not be arbitrarily deprived of the opportunity to perform abortions which may account for a portion of their livelihoods.

It seems to this court that such a circumstance would be tantamount to denial of due process guaranteed by the Fourteenth Amendment. For the above reasons plaintiffs Mock and Tietz have standing to contest the validity of Virginia Hospital Commission Resolution No. 2606.

Plaintiffs implicitly contend that the other plaintiffs have standing in this case solely on the basis of their status as municipal or federal taxpayers. In view of the above holding, however, the court need not rule on this assertion, nor the applicability of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), as affecting plaintiffs Nyberg, Arpi, Williams and Wilson.

## CLASS ACTION

■ Plaintiffs also purport to speak for all others similarly situated. The statements in the complaint will be treated as a motion for a class action under Rule 23 (a) and (b)(2)[2] of the Federal Rules of Civil Procedure. In order to maintain a class action plaintiffs must show that the requirements of the rule have been met. Bel Air Markets v. Foremost Dairies, Inc., 55 F.R.D. 538 (N.D.Cal.1972); City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Penn.1970). It may be that there are questions of law and fact in common between the two doctors who have standing and other potential plaintiffs; that claims and defenses may be similar and that these plaintiffs might well represent a class of parties adequately. However, there is no showing to that effect; likewise it taxes the imagination that there are a sufficient number of doctors who desire to perform abortions in a municipality the size of Virginia, Minnesota that it would be difficult to join all of them individually who so desire. The court finds that plaintiffs have not sustained their burden of proof or the desirability or right to a class action and therefore the motion to make this a class action is denied, except to the extent that this decision shall be applicable, so far as defendants are concerned, to any requesting licensed physician.

## CITY OF VIRGINIA AS A DEFENDANT

■ Although the defendants have not presented the court with any motion, it is clear beyond question that a municipal corporation is not a proper party defendant for an action under 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Wallach v. Pagedale, 359 F.2d 57 (8th Cir. 1966); Savage v. United States, 322 F.Supp. 33 (D.Minn.1971), aff'd, 450 F.2d 449 (8th Cir. 1971), cert. denied, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972), rehearing denied, 406 U.S. 951, 92 S.Ct. 2048, 32 L.Ed.2d 339 (1972). Therefore the court dismisses the City of Virginia as a defendant in this action *sua sponte.*

## THE MERITS

In accord with the finding of the Supreme Court in Roe v. Wade and Doe v. Bolton, *supra,* that an abortion in the

---

2. Rule 23. Class Actions.

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.   .   .   .   .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

.   .   .   .   .

early stages of pregnancy may actually be safer for the mother than to undergo childbirth, the court in Hathaway v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973), stated in regard to sterilization that:

". . . we are not mandating the city or state to maintain this hospital, or to retain its present size, staff or facilities. The hospital is not required to perform all kinds of non-therapeutic or even all therapeutic surgical procedures. We are merely saying . . . that once the state has undertaken to provide general short-term hospital care, as here, it may not constitutionally draw the line at medically indistinguishable surgical procedures that impinge on fundamental rights." 475 F.2d at 706

See also Doe v. Bolton *supra*; Klein v. Nassau County Medical Center, 347 F. Supp. 496 (E.D.N.Y.1972) app. pending, 410 U.S. 922, 93 S.Ct. 1361, 35 L. Ed.2d 584 (1973). The court is persuaded that the reasoning in *Hathaway* is correct and applicable to a case such as this. There is no showing or allegation that any strain will be placed upon the hospital facilities or staff by a requirement that abortion services be provided. In any event, the Hospital administrators may not arbitrarily preclude abortions from the variety of services offered which require no greater expenditure of available facilities and/or skills.

■ The Supreme Court set out a succinct rule in Roe v. Wade, *supra* to apply to facts where questions involving abortion services are raised.

"(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

"(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

"(c) For the state subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." 410 U. S. at 164, 93 S.Ct. at 732

It seems to this court that Roe v. Wade leaves no room for exception or for equivocation. It's mandate is clear and explicit. There is nothing which could be added here to make it more clear or detailed. It seems unquestioned that the action of the Virginia Municipal Hospital Commission is "state" action within the meaning of 42 U.S.C. § 1983 and the case is thus distinguishable from that of a privately owned and operated hospital as in Doe and Sandmire v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973), relied on by defendants. Nor need the court here rely on the fact that the hospital receives some public funds. Following *Wade* and *Bolton* the Minnesota Supreme Court in State v. Hultgren, 295 Minn. 299, 204 N.W.2d 197 (1973), and State v. Hodgson, 295 Minn. 294, 204 N.W.2d 199 (1973), declared invalid the Minnesota anti-abortion statute, Minn.Stat. 617.18, and defendants thus cannot rely thereon in support of their position. Accordingly, and following the rule above, defendants are required and ordered to adopt policies and administrative procedures to facilitate those policies consistent with the rule set out above.

■ Additionally plaintiffs are entitled to a permanent injunction enjoining the hospital administration from enforcing its present policy and to a decree that Resolution No. 2606 is null and void and in violation of law. It is clear that a single judge rather than a three-judge court may rule on a regulation of this sort. Garren v. City of Winston-Salem,

463 F.2d 54 (4th Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); Weintraub v. Hanrahan, 435 F.2d 461 (7th Cir. 1970); Heath v. City of New Orleans, 320 F.Supp. 545 (S.C. La.1970), aff'd, 435 F.2d 1307 (5th Cir. 1970). Resolution No. 2606 takes no consideration of the separate trimesters of the pregnancy period and is devoid of any apparent awareness of the varying degrees to which public interests may be imposed upon a pregnant woman in opposition to her private interests. There can be no other conclusion but that Resolution No. 2606 flies directly in the face of the holdings in Roe v. Wade and Doe v. Bolton, *supra*, and it therefore must be declared null and void.

The administrators of the hospital will not be ordered to set up procedures to provide abortion services solely upon the demand of a pregnant woman without an accompanying doctor's request. That situation is not contemplated in either *Wade*, 410 U.S. at 153, 93 S.Ct. 705 or *Bolton*, 410 U.S. at 189, 93 S.Ct. 739. Neither will the court impose its lay opinion upon the hospital administrators by setting out specific and detailed procedures by which abortion services will be provided. Rather, medical techniques are best left to those who are professionally trained. However, the court does not merely strike down Resolution No. 2606, but requires the hospital administrators to take positive steps within a period of 30 days from date hereof to provide abortion services and facilities to licensed physicians in keeping with the rule quoted above.

The court does not purport to require individuals to participate in the providing of abortion services in contravention of their religious or moral convictions. The relief granted goes only so far as to require that facilities at this public institution be provided for abortion services for those doctors and their women patients who have a right to them and request them.

A separate order has been entered.