Jane ROE, Plaintiff,

v.

Henry WADE, Defendant,

v.

James Hubert HALLFORD, M.D.,
Intervenor.

John DOE and Mary Doe, Plaintiffs,

v.

Henry WADE, Defendant.

Civ. A. Nos. 3–3690–B, 3–3691–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 17, 1970.

Linda N. Coffee, Dallas, Tex., Sarah Weddington, Austin, Tex., for plaintiffs.

Fred Bruner, Daugherty, Bruner, Lastelick & Anderson, Ray L. Merrill, Jr., Dallas, Tex., for intervenor.

John B. Tolle, Asst. Dist. Atty., Dallas, Tex., Jay Floyd, Asst. Atty. Gen., Austin, Tex., for defendant.

Before GOLDBERG, Circuit Judge, and HUGHES and TAYLOR, District Judges.

On March 3, 1970, plaintiff Jane Roe filed her original complaint in CA–3–3690–B under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. She alleged jurisdiction to be conferred upon the Court by Title 28, United States Code, Sections 1331, 1343, 2201, 2202, 2281, and 2284 and by Title 42, United States Code, Section 1983. On April 22, plaintiff Roe amended her complaint to sue "on behalf of herself and all others similarly situated."

On March 23, James Hubert Hallford, M. D., was given leave to intervene. Hallford's complaint recited the same constitutional and jurisdictional grounds as the complaint of plaintiff Roe. According to his petition for intervention, Hallford seeks to represent "himself and the class of people who are physicians, licensed to practice medicine under the laws of the State of Texas and who fear future prosecution."

On March 3, 1970, plaintiffs John and Mary Doe filed their original complaint in CA–3–3691–C. The complaint of plaintiffs Doe recited the same constitutional and jurisdictional grounds as had the complaint of plaintiff Roe in CA–3–3690 and, like Roe, plaintiffs Doe subsequently amended their complaint so as to assert a class action.

Plaintiffs Roe and Doe have adopted pseudonyms for purposes of anonymity.

**PER CURIAM:**

Two similar cases are presently before the Court on motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant in both cases is Henry Wade, District Attorney of Dallas County, Texas. In one action plaintiffs are John and Mary Doe, and in the other Jane Roe and James Hubert Hallford, M.D., intervenor.[1]

From their respective positions of married couple, single woman, and practicing physician, plaintiffs attack Articles 1191, 1192, 1193, 1194, and 1196 of the Texas Penal Code,[2] hereinafter referred to as the Texas Abortion Laws. Plaintiffs allege that the Texas Abortion Laws deprive married couples and single women of the right to choose whether to have children, a right secured by the Ninth Amendment.

2. *Article 1191 Abortion*
If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By "abortion" is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.
*Article 1192 Furnishing the Means*
Whoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice.
*Article 1193 Attempt at Abortion*
If the means used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to produce abortion, provided it be shown that such means were calculated to produce that result, and shall be fined not less than one hundred nor more than one thousand dollars.
*Article 1194 Murder in Producing Abortion*
If the death of the mother is occasioned by an abortion so produced or by an attempt to effect the same it is murder.
*Article 1196 By Medical Advice*
Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother.

Defendant challenges the standing of each of the plaintiffs to bring this action. However, it appears to the Court that Plaintiff Roe and plaintiff-intervenor Hallford occupy positions *vis-a-vis* the Texas Abortion Laws sufficient to differentiate them from the general public. Compare Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965),[3] with Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923). Plaintiff Roe filed her portion of the suit as a pregnant woman wishing to exercise the asserted constitutional right to choose whether to bear the child she was carrying. Intervenor Hallford alleged in his portion of the suit that, in the course of daily exercise of his duty as a physician and in order to give his patients access to what he asserts to be their constitutional right to choose whether to have children, he must act so as to render criminal liability for himself under the Texas Abortion Laws a likelihood. Dr. Hallford further alleges that Article 1196 of the Texas Abortion Laws is so vague as to deprive him of warning of what produces criminal liability in that portion of his medical practice and consultations involving abortions.

On the basis of plaintiffs' substantive contentions,[4] it appears that there then exists a "nexus between the status asserted by the litigant[s] and the claim[s] [they present]." Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Further, we are satisfied that there presently exists a degree of contentiousness between Roe and Hallford and the defendant to establish a "case of actual controversy" as required by Title

28, United States Code, Section 2201. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Each plaintiff seeks as relief, *first*, a judgment declaring the Texas Abortion Laws unconstitutional on their face and, *second*, an injunction against their enforcement. The nature of the relief requested suggests the order in which the issues presented should be passed upon.[5] Accordingly, we see the issues presented as follows:

I. Are plaintiffs entitled to a declaratory judgment that the Texas Abortion Laws are unconstitutional on their face?

II. Are plaintiffs entitled to an injunction against the enforcement of these laws?

## I.

Defendants have suggested that this Court should abstain from rendering a decision on plaintiffs' request for a declaratory judgment. However, we are guided to an opposite conclusion by the authority of Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967):

"The judge-made doctrine of abstention * * * sanctions * * * escape only in narrowly limited 'special circumstances.' * * * One of the 'special circumstances' * * * is the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question."

The Court in Zwickler v. Koota subsequently quoted from United States v. Livingston, 179 F.Supp. 9, 12–13 (E.D. S.C.1959):

"Regard for the interest and sovereignty of the state and reluctance

---

3. By the authority of *Griswold*, Dr. Hallford has standing to raise the rights of his patients, single women and married couples, as well as rights of his own.

4. "[I]n ruling on standing, it is both appropriate and necessary to look to the substantive issues * * * to determine whether there is a logical nexus between

the status asserted and the claim sought to be adjudicated." Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

5. Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Cameron v. Johnson, 390 U.S. 611, 615, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction. * * * The decision in [Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152], however, is not a broad encyclical commanding automatic remission to the state courts of all federal constitutional questions arising in the application of state statutes. * * * Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit." [6]

■ Inasmuch as there is no possibility that state question adjudication in the courts of Texas would eliminate the necessity for this Court to pass upon plaintiffs' Ninth Amendment claim or Dr. Hallford's attack on Article 1196 for vagueness, abstention as to their request for declaratory judgment is unwarranted. Compare City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958), with Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

■ On the merits, plaintiffs argue as their principal contention [7] that the Texas Abortion Laws must be declared unconstitutional because they deprive single women and married couples of their right, secured by the Ninth Amendment,[8] to choose whether to have children. We agree.

The essence of the interest sought to be protected here is the right of choice over events which, by their character and consequences, bear in a fundamental manner on the privacy of individuals. The manner by which such interests are secured by the Ninth Amendment is illustrated by the concurring opinion of Mr. Justice Goldberg in Griswold v. Connecticut, 381 U.S. 479, 492, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965):

"[T]he Ninth Amendment shows a belief of the Constitution's authors that *fundamental* rights exist that are not expressly enumerated in the first eight amendments and intent that the list of rights included there not be deemed exhaustive." * * *

"The Ninth Amendment simply shows the intent of the Constitution's authors that other *fundamental* personal rights should not be denied such protection or disparaged in any other way simply because they are not specifically listed in the first eight constitutional amendments." (Emphasis added.) [9]

Relative sanctuaries for such "fundamental" interests have been established

---

6. 389 U.S. at 250–251, 88 S.Ct. at 396–397. (Citations omitted.)

7. Aside from their Ninth Amendment and vagueness arguments, plaintiffs have presented an array of constitutional arguments. However, as plaintiffs conceded in oral argument, these additional arguments are peripheral to the main issues. Consequently, they will not be passed upon.

8. "The enumeration in the Constitution, of certain rights shall not be construed to deny or disparage others retained by the people."

9. At 492, 85 S.Ct. at 1686 the opinion states: "In determining which rights are fundamental, judges are not left at large to decide cases in light of their personal and private notions. Rather, they must look to the 'traditions and [collective] conscience of our people' to determine whether a principle is 'so rooted [there] * * * as to be ranked as fundamental'. Snyder v. [Commonwealth of] Massachusetts, 291 U.S. 97, 105 [54 S.Ct. 330, 78 L.Ed. 674]. The inquiry is whether a right involved 'is of such a character that it cannot be denied without violating those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." * * *' Powell v. Alabama, 287 U.S. 45, 67 [53 S.Ct. 55, 77 L.Ed. 158]."

'for the family,[10] the marital couple,[11] and the individual.[12]

Freedom to choose in the matter of abortions · has been accorded the status of a "fundamental" right in every case coming to the attention of this Court where the question has been raised. Babbitz v. McCann, 312 F.Supp. 725 (E.D. Wis.1970); People v. Belous, 80 Cal. Rptr. 354, 458 P.2d 194 (Cal.1969); State v. Munson, (South Dakota Circuit Court, Pennington County, April 6, 1970). *Accord*, United States v. Vuitch, 305 F.Supp. 1032 (D.D.C.1969). The California Supreme Court in *Belous* stated:

> "The fundamental right of the woman to choose whether to bear children follows from the Supreme Court's and this court's repeated acknowledgment of a 'right of privacy' or 'liberty' in matters related to marriage, family, and sex." 80 Cal.Rptr. at 359, 458 P.2d at 199.

The District Court in *Vuitch* wrote:

> "There has been  *  *  *  an increasing indication in the decisions of the Supreme Court of the United States that as a secular matter a woman's liberty and right of privacy extends to

family, marriage and sex matters and may well include the right to remove an unwanted child at least in early stages of pregnancy." 305 F.Supp. at 1035.

Writing about Griswold v. Connecticut, *supra*, and the decisions leading up to it, former Associate Justice Tom C. Clark observed:

> "The result of these decisions is the evolution of the concept that there is a certain zone of individual privacy which is protected by the Constitution. Unless the State has a compelling subordinating interest that outweighs the individual rights of human beings, it may not interfere with a person's marriage, home, children and day-to-day living habits. This is one of the most fundamental concepts that the Founding Fathers had in mind when they drafted the Constitution." [13]

Since the Texas Abortion Laws infringe upon plaintiffs' fundamental right to choose whether to have children, the burden is on the defendant to demonstrate to the satisfaction of the Court that such infringement is necessary to support a compelling state interest.[14] The defendant has failed to meet this burden.

---

10. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); and Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944).

11. Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and Buchanan v. Batchelor, 308 F.Supp. 729 (N.D.Tex.1970).

12. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

13. Religion, Morality, and Abortion: A Constitutional Appraisal, 2 Loyola Univ. L.Rev. 1, 8 (1969). Mr. Justice Clark goes on to write, "* * * abortion falls ' within that sensitive area of privacy— the marital relation. One of the basic values of this privacy is birth control, as

evidenced by the *Griswold* decision. Griswold's act was to prevent formation of the fetus. This, the Court found, was constitutionally protected. If an individual may prevent contraception, why can he not nullify that conception when prevention has failed?" *Id.* at 9.

14. "In a long series of cases this Court has held that where fundamental personal liberties are involved, they may not be abridged by the States simply on a showing that a regulatory statute has some rational relationship to the effectuation of a proper state purpose. 'Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling,' Bates v. [City of] Little Rock, 361 U.S. 516, 524 [80 S.Ct. 412, 4 L.Ed.2d 480]." Griswold v. Connecticut, 381 U.S. 479, 497, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (concurring opinion of Mr. Justice Goldberg). *See also* Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

To be sure, the defendant has presented the Court with several compelling justifications for state presence in the area of abortions. These include the legitimate interests of the state in seeing to it that abortions are performed by competent persons and in adequate surroundings. Concern over abortion of the "quickened" fetus may well rank as another such interest. The difficulty with the Texas Abortion Laws is that, even if they promote these interests,[15] they far outstrip these justifications in their impact by prohibiting *all* abortions except those performed "for the purpose of saving the life of the mother." [16]

It is axiomatic that the fact that a statutory scheme serves permissible or even compelling state interests will not save it from the consequences of unconstitutional overbreadth. *E. g.*, Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Buchanan v. Batchelor, 308 F.Supp. 729 (N.D.Tex. 1970). While the Ninth Amendment right to choose to have an abortion is not unqualified or unfettered, a statute designed to regulate the circumstances of abortions must restrict its scope to compelling state interests. There is unconstitutional overbreadth in the Texas Abortion Laws because the Texas Legislature did not limit the scope of the statutes to such interests. On the contrary, the Texas statutes, in their monolithic interdiction, sweep far beyond any areas of compelling state interest.

Not only are the Texas Abortion Laws unconstitutionally overbroad, they are also unconstitutionally vague. The Supreme Court has declared that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). *See also* Giaccio v. Pennsylvania, 382 U.S. 399, 402–403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). Under this standard the Texas statutes fail the vagueness test.

The Texas Abortion Laws fail to provide Dr. Hallford and physicians of his class with proper notice of what acts in their daily practice and consultation will subject them to criminal liability. Article 1196 provides:

"Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

It is apparent that there are grave and manifold uncertainties in the application of Article 1196. How *likely* must death be? Must death be certain if the abortion is not performed? Is it enough that the woman could not undergo birth without an ascertainably higher possibility of death than would normally be the case? What if the woman threatened suicide if the abortion was not performed? How *imminent* must death be if the abortion is not performed? Is it sufficient if having the child will shorten the life of the woman by a number of years? These questions simply cannot be answered.

The grave uncertainties in the application of Article 1196 and the consequent uncertainty concerning criminal liability under the related abortion statutes are more than sufficient to render the Texas Abortion Laws unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

---

15. It is not clear whether the Texas laws presently serve the interests asserted by the defendant. For instance, the Court gathers from a reading of the challenged statutes that they presently would permit an abortion "for the purpose of saving the life of the mother" to be performed *anywhere* and quite possibly by *one other than a physician.*

16. Article 1196.

## II.

We come finally to a consideration of the appropriateness of plaintiffs' request for injunctive relief. Plaintiffs have suggested in oral argument that, should the Court declare the Texas Abortion Laws unconstitutional, that decision would of itself warrant the issuance of an injunction against state enforcement of the statutes. However, the Court is of the opinion that it must abstain from granting the injunction.

Clearly, the question whether to abstain concerning an injunction against the enforcement of state criminal laws is divorced from concerns of abstention in rendering a declaratory judgment. Quoting from Zwickler v. Koota,

"[A] request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." 389 U.S. at 254, 88 S.Ct. at 399.

■ The strong reluctance of federal courts to interfere with the process of state criminal procedure was reflected in Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 SCt. 1116, 1120–21, 14 L.Ed. 2d 22 (1965):

"[T]he Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not

amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

This federal policy of non-interference with state criminal prosecutions must be followed except in cases where "statutes are justifiably attacked on their face as abridging free expression," or where statutes are justifiably attacked "as applied for the purpose of discouraging protected activities." Dombrowski v. Pfister, 380 U.S. at 489–490, 85 S.Ct. at 1122.

■ Neither of the above prerequisites can be found here. While plaintiffs' first substantive argument rests on notions of privacy which are to a degree common to the First and Ninth Amendments, we do not believe that plaintiffs can seriously argue that the Texas Abortion Laws are vulnerable "on their face as abridging free expression." [17] Further, deliberate application of the statutes "for the purpose of discouraging protected activities" has not been alleged. We therefore conclude that we must abstrain from issuing an injunction against enforcement of the Texas Abortion Laws.

## CONCLUSION

In the absence of any contested issues of fact, we hold that the motions for summary judgment of the plaintiff Roe and plaintiff-intervenor Hallford should be granted as to their request for declaratory judgment. In granting declaratory relief, we find the Texas Abortion Laws unconstitutional for vagueness and overbreadth, though for the reasons herein stated we decline to issue an injunction. We need not here delineate the factors which could qualify the right of a mother to have an abortion. It is sufficient to state that legislation concerning abortion must address itself to more than a bare negation of that right.

17. "[T]he door is not open to all who would test the validity of state statutes or conduct a federally supervised pre-trial of a state prosecution by the simple expe- dient of alleging that the prosecution somehow affects First Amendment rights." Porter v. Kimzey, 309 F.Supp. 993, 995 (N.D.Ga.1970).

## JUDGMENT

This action came on for hearing on motions for summary judgment before a three-judge court composed of Irving L. Goldberg, Circuit Judge, Sarah T. Hughes and W. M. Taylor, Jr., District Judges. The defendant in both cases is Henry Wade, District Attorney of Dallas County, Texas. In one action plaintiffs are John and Mary Doe, husband and wife, and in the other Jane Roe and James Hubert Hallford, M.D., intervenor.

The case having been heard on the merits, the Court, upon consideration of affidavits, briefs and arguments of counsel, finds as follows:

### Findings of Fact

(1) Plaintiff Jane Roe, plaintiff-intervenor James Hubert Hallford, M.D., and the members of their respective classes have standing to bring this lawsuit.

(2) Plaintiffs John and Mary Doe failed to allege facts sufficient to create a present controversy and therefore do not have standing.

(3) Articles 1191, 1192, 1193, 1194 and 1196 of the Texas Penal Code, hereinafter referred to as the Texas Abortion Laws, are so written as to deprive single women and married persons of the opportunity to choose whether to have children.

(4) The Texas Abortion Laws are so vaguely worded as to produce grave and manifold uncertainties concerning the circumstances which would produce criminal liability.

### Conclusions of Law

(1) This case is a proper one for a three-judge court.

(2) Abstention, concerning plaintiffs' request for a declaratory judgment, is unwarranted.

(3) The fundamental right of single women and married persons to choose whether to have children is protected by the Ninth Amendment, through the Fourteenth Amendment.

(4) The Texas Abortion Laws infringe upon this right.

(5) The defendant has not demonstrated that the infringement of plaintiffs' Ninth Amendment rights by the Texas Abortion Laws is necessary to support a compelling state interest.

(6) The Texas Abortion Laws are consequently void on their face because they are unconstitutionally overbroad.

(7) The Texas Abortion Laws are void on their face because they are vague in violation of the Due Process Clause of the Fourteenth Amendment.

(8) Abstention, concerning plaintiffs' request for an injunction against the enforcement of the Texas Abortion Laws, is warranted.

It is therefore ordered, adjudged and decreed that: (1) the complaint of John and Mary Doe be dismissed; (2) the Texas Abortion Laws are declared void on their face for unconstitutional overbreadth and for vagueness; (3) plaintiffs' application for injunction be dismissed.