Janice **ABELE** et al., Plaintiffs-Appellants,

v.

Arnold **MARKLE** et al., Defendants-Appellees.

No. 279, Docket 71-1605.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1971.

Decided Dec. 13, 1971.

**1122**

Catherine G. Roraback, New Haven, Conn. (Nancy Stearns, New York City, Kathryn Emmett, Bridgeport, Conn., Marjorie Gelb, W. Hartford, Conn., Barbara Milstein, New Haven, Conn., Marilyn Seichter, Hartford, Conn., on the brief), for plaintiffs-appellants.

George D. Stoughton, Asst. State's Atty., Raymond J. Cannon, Asst. Atty. Gen., Hartford, Conn. (Robert K. Killian, Atty. Gen., Hartford, Conn., on the brief), for defendants-appellees.

Before KAUFMAN and MANSFIELD, Circuit Judges, and LEVET, District Judge.*

MANSFIELD, Circuit Judge:

Appellants, 858 women, brought suit in the United States District Court for the District of Connecticut pursuant to 42 U.S.C. § 1983 challenging the constitutionality of that State's anti-abortion statutes,[1] requesting that a three-judge district court be convened pursuant to 28 U.S.C. §§ 2281 and 2284, and seeking a permanent injunction against enforcement of the statutes. Federal jurisdiction was invoked pursuant to 28 U.S.C. §§ 1343(3) and (4). Plaintiffs appeal from the district court's dismissal of their complaint and refusal to convene a three-judge court. We affirm in part, reverse in part, and remand the case for further proceedings.

Plaintiffs are residents of Connecticut. Each falls within one of three groups: (1) women of child-bearing age, (2) women physicians, nurses and medical personnel, and (3) women who counsel others concerning abortions. Except for defendant Robert K. Killian, the Attorney General of Connecticut, defendants are State's Attorneys for nine counties in Connecticut, charged with enforcement of its anti-abortion laws.

Sections 53–29 and 53–30, Conn.Gen. Stats., make it a crime for any person to attempt to procure an abortion upon a

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. The pertinent sections of Connecticut General Statutes are as follows:

"*Section 53–29*

"*Attempt to procure miscarriage.* Any person who gives or administers to any woman, or advises or causes her to take or use anything, or uses any means, with intent to procure upon her a miscarriage or abortion, unless the same is necessary to preserve her life or that of her unborn child, shall be fined not more than one thousand dollars or imprisoned in the State Prison not more than five years or both.

"*Section 53–30*

"*Abortion or miscarriage.* Any woman who does or suffers anything to be done, with intent thereby to produce upon herself miscarriage or abortion,

unless necessary to preserve her life or that of her unborn child, shall be fined not more than five hundred dollars or imprisoned not more than two years or both.

"*Section 53–31*

"*Encouraging the commission of abortion.* Any person who, by publication, lecture, or otherwise or by advertisement or by the sale or circulation of any publication, encourages or prompts to the commission of the offenses described in section 53–29 or 53–30, or who sells or advertises medicines or instruments or other devices for the commission of any of said offenses except to a licensed physician or to a hospital approved by the state department of health, or who advertises any so-called monthly regulator for women, shall be fined not more than five hundred dollars or imprisoned not more than one year or both."

woman or for a woman to produce an abortion upon herself unless "necessary to preserve her life or that of her unborn child." Section 53–31 makes it a misdemeanor for any person to encourage the commission of an abortion by any one of various means, including use of publications, lectures, advertisements or sale or circulation of publications.

The first claim of the complaint alleges that some plaintiffs have physical disabilities making pregnancy and childbearing hazardous to their health, some are subject to the risk of unplanned pregnancies, some do not presently want to bear children, and others have obtained abortions at the risk of prosecution or outside of ordinary medical settings and have suffered injuries or impairment to their health. It is claimed that the aforementioned Connecticut statutes violate plaintiffs' rights under the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments. More specifically plaintiffs allege that the Connecticut abortion laws deny equal protection to women who cannot afford psychological and medical evaluations or to pay for out-of-state abortions, that they are void for vagueness, that they deny plaintiffs their right of privacy and of free speech guarantees, that they discriminate against women on the basis of sex, and that they impose cruel and unusual punishment.

The second claim of the complaint alleges on behalf of women doctors and medical personnel that Connecticut's statutory prohibition against performing, recommending, or disseminating information about abortions violates their constitutional rights by preventing them from practicing their professions, by prohibiting their engaging in free speech with respect to medical abortion procedures, by imposing vague standards contrary to or not correlated with medical diagnoses, and by subjecting them to criminal liability for engaging in such practices. Similar charges are made in Claim 3 on behalf of plaintiffs engaged in counseling, advertising, lecturing and publishing information concerning family planning, health and guidance.

In support of their motion for the convening of a three-judge court, plaintiffs filed 31 affidavits of various plaintiffs, including doctors, and of male physicians engaged in the practice of medicine in Connecticut. These affidavits in general support the factual allegations of the complaint as we have outlined them. They reveal that numerous women of child-bearing age desire in the event of pregnancy to have abortions for various reasons (*e.g.*, health, inability to support and maintain a child, interference with essential employment, desire to coordinate the bearing of children with the mother's completion of her education, or simply the wish not to bear children at this time), and that they face inability to obtain abortions or advice with respect to abortions from the medical profession in Connecticut because of that State's aforementioned statutory prohibitions, even though doctors are of the opinion that abortions in some instances would be medically necessary or desirable, particularly where defective children might result. No plaintiff, however, has alleged or stated that she is presently pregnant and desirous of obtaining an abortion in Connecticut.

By decision dated May 12, 1971, the district court dismissed the action, finding that the "suit lacks a jurisdictional basis to be maintained in the federal court." In his opinion Judge Clarie pointed out that the issues as to the constitutionality of the Connecticut anti-abortion statutes "do not arise in the context of specific factual situations. None of the plaintiffs allege that they are pregnant or that the named physicians have performed any abortions. The plaintiffs are not threatened with imminent prosecution nor do they seek to enjoin any state prosecution." He further observed that there were pending in the Connecticut Supreme Court appeals from two convictions, one of a physician and the other of a non-medical

abortionist,[2] in which the constitutionality of the Connecticut abortion statutes was challenged and concluded that dismissal was warranted by the recent decisions of the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). In those cases, the Court held that federal courts may not grant injunctive or declaratory relief with respect to state statutes which are the basis for a pending state criminal prosecution of those seeking federal relief, except in unusual circumstances, such as where the state prosecutions are conducted in bad faith or as part of a campaign of harassment, *e.g.*, Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965).

We turn first to the district court's dismissal of the action for lack of jurisdiction for the reason that if the court lacked jurisdiction over the subject matter, it would be unnecessary to consider whether a three-judge court should have been convened. Although the district judge's function, in passing upon an application to convene a three-judge court, is limited to determining whether the requirements of 28 U.S.C. §§ 2281 and 2284 have been met, Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), this assumes the existence of jurisdiction. It is elementary that the district court may—indeed it must—dismiss an action over which it lacks jurisdiction. Crossen v. Breckenridge, 446 F.2d 833, 837 (6th Cir.1971); Lion Manufacturing Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833, 840 (1964); Jacobs v. Tawes, 250 F.2d 611, 614 (4th Cir.1957); Campagnuolo v. Harder, 319 F.Supp. 414, 416 (D.Conn. 1970), reversed on other grounds, 440 F.2d 1225 (2d Cir.1971); American Commuters Ass'n v. Levitt, 279 F.Supp. 40, 46 (S.D.N.Y.1967), affd., 405 F.2d 1148 (2d Cir.1969).

The threshold question, as Judge Clarie sensed, was whether the plaintiffs had sufficient standing to present a justiciable case within the meaning of Article III, § 2 of the Constitution, which limits the judicial power of federal courts to adjudication of "cases" or "controversies." The existence of a case or controversy depends upon whether the persons seeking relief have alleged a sufficient personal stake in the outcome to assure that the court will be called upon to resolve real issues between genuine adversaries rather than merely to give advisory opinions with respect to abstract or theoretical questions. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Flast v. Cohen, 392 U.S. 83, 95–99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). It is settled that advisory opinions may not be given by federal courts, United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961), and that the constitutionality of laws may be challenged only by those litigants who will suffer some actual or substantial injury from their enforcement, as distinguished from a remote, general, or hypothetical possibility of harm. United Public Workers v. Mitchell, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

The concept of "standing" as a prerequisite is admittedly an amorphous one. However, we are satisfied in the present case that those female plaintiffs who seek to invoke the court's jurisdiction solely on the ground that they are of child-bearing age do not allege a sufficient threat of personal harm to give them standing to attack the constitutionality of Connecticut's anti-abortion laws. Although some of them may in the future become pregnant and may in such event desire an abortion in Connecticut, it is also possible that they will not become pregnant or that if they do they will, upon further reflection, decide for other reasons against an abortion. We need not explore the many other con-

---

2. State v. Sulman, No. 7924, Superior Court, New London County; State v. Minello, No. 9834, Superior Court, New Haven County, Waterbury.

ditions that might preclude their gaining any stake or interest, such as change of domicile- to another state, infertility, or the like. It is clear that any threat of harm to them is remote and hypothetical. Accordingly we hold that non-pregnant female plaintiffs in this category do not show a sufficient nexus or present a sufficiently concrete issue in an adversary setting to give them standing, and we affirm the district court's dismissal of the complaint as to plaintiffs claiming standing solely on the basis of their child-bearing age. However, we grant leave to pregnant plaintiffs to file an amended complaint so alleging. Pregnancy has repeatedly been held to confer standing to challenge anti-abortion laws, since the prospective enforcement of such statutes prevents the mother from deciding not to bear the child. Crossen v. Breckenridge, *supra*, 446 F. 2d at 839; Hall v. Lefkowitz, 305 F. Supp. 1030, 1031 (S.D.N.Y.1969) (Weinfeld, J.); Roe v. Wade, 314 F.Supp. 1217, 1220 (N.D.Tex.1970) (3-judge court), *prob. juris.* postponed to hearing on the merits, 402 U.S. 941, 91 S.Ct. 1610, 29 L.Ed.2d 108 (1971); Doe v. Dunbar, 320 F.Supp. 1297, 1300 (D. Colo.1970) (3-judge court); Doe v. Scott, 310 F.Supp. 688, 689 (N.D.Ill. 1970); Doe v. Bolton, 319 F.Supp. 1048, 1052 (N.D.Ga.1970) (3-judge court), *prob. juris.* postponed to hearing on the merits, 402 U.S. 941, 91 S.Ct. 1614, 29 L.Ed.2d 109 (1971).

■ As distinguished from non-pregnant women claiming standing solely because they are of child-bearing age, the remaining plaintiffs (physicians, nurses, medical and counseling personnel and those similarly engaged) allege a sufficiently direct threat of personal harm to give them standing. Each asserts that she is qualified as part of the practice of her profession or calling in Connecticut to perform abortions or to give advice and assistance in connection therewith. It is undisputed that the State of Connecticut has enforced the statutes against those performing abortions, including doctors, a factor which has been

held to establish standing, Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Crossen v. Breckenridge, *supra*, 446 F.2d at 840. Furthermore, the practical effect of such enforcement of the statutes is to bar these plaintiffs from engaging in activities that could be an important source of their livelihood. These circumstances disclose a sufficiently substantial and imminent interest to satisfy the standing requirement. Such professional women should not be forced to undergo the hardship of criminal prosecution as the sole means of seeking relief. Doe v. Dunbar, *supra*, 320 F.Supp. at 1300. Anderson v. Vaughn, 327 F.Supp. 101, 103 (D.Conn.1971) (3-judge court, per Smith, C. J.); Doe v. Bolton, *supra*, 319 F.Supp. at 1052. Therefore, the complaint should not have been dismissed as to such plaintiffs.

■■ Turning to the alternative basis of the district court's decision—the Supreme Court's decisions in Younger v. Harris, *supra,* and Samuels v. Mackell, *supra*—we find that the district court did not have the power to dismiss the complaint for lack of jurisdiction, since it cannot be said that these decisions compel abstention here. The question whether to abstain under the doctrine enunciated in *Younger* and *Samuels,* going as it does to the merits and calling for use of discretion as to whether equitable jurisdiction should be exercised, is one for the three-judge court rather than the single district judge. Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra*; Bjarsch v. DiFalco, 300 F.Supp. 961, 968 (S.D.N.Y.1969); Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299, 309 (1963). The single judge asked to convene a three-judge court is limited to determining (1) whether the constitutional question is substantial; (2) whether the complaint at least formally alleges a basis for equitable relief; and (3) whether the case comes within the requirement of the three-judge statute. Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra*.

Here any doubts as to the substantiality of the constitutional question which might be raised by the Supreme Court's recent decision in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971) (upholding District of Columbia's anti-abortion statute as interpreted by it) are dispelled by the Court's agreeing to hear argument on the merits in Doe v. Bolton, *supra,* and Roe v. Wade, *supra,* where the constitutionality of similar state anti-abortion laws was challenged. Since the criteria for convening a three-judge court are satisfied, the district judge's duty is to grant the motion and leave the issue of abstention to the three-judge court for decision.

Where undisputed facts clearly dictate that there can be but one ruling by a three-judge court, if convened, we have on occasion, in the interest of conserving judicial resources, affirmed the district court's denial of a motion to convene such a court rather than remand the case for a useless and expensive ritual. Astro Cinema Corp. Inc. v. Mackell, 422 F.2d 293, 298 (2d Cir.1970); Green v. Board of Elections, 380 F.2d 445, 449 (2d Cir.1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). The present appeal, however, is not an appropriate one for the application of that doctrine since the parties have advanced conflicting arguments which require the exercise of a three-judge court's discretion. On the one hand it is asserted that since there is no state court interpretation that could avoid or modify the constitutional questions raised here, a federal court may not abstain. Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). On the other hand, defendants contend on the basis of the reasoning adopted by Judge Clarie as a ground for dismissal for lack of jurisdiction that abstention is authorized by Younger v. Harris, *supra.* Since a genuine issue appears to be presented as to the propriety of abstention, which must be decided by a three-judge court, we take no position on the merits of that issue.

The district court's dismissal of the complaint is affirmed as to all plaintiffs except women physicians, nurses, medical personnel and others who perform, or assist in the performance of, abortions or who counsel concerning abortions, with leave to file an amended complaint on behalf of any pregnant plaintiffs seeking relief solely on that ground. In all other respects the judgment of the district court is reversed and remanded for further proceedings in accordance with this opinion.