Jesse **FOWLER**, Individually and on behalf of all others similarly situated, Appellant,

v.

Abner **ALEXANDER**, Chief District Judge, 21st Judicial District of North Carolina, et al., Appellees.

No. 72–1471.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1972.

Decided May 7, 1973.

Michael Sheely, Winson-Salem, N. C. and Herman L. Stephens, Kernersville, N. C. (Thorns Craven and Nonnie F. Midgette, Winston-Salem, N. C., on brief) for appellant.

Jacob L. Safron, Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen. of N. C. and P. Eugene Price, Jr., County Atty., for Forsyth County, N. C., on brief) for appellees.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Contending that certain North Carolina statutes,[1] under the terms of which he has been temporarily confined earlier, were unconstitutional, the plaintiff seeks declaratory relief finding such statutes invalid, an injunction against their future enforcement, and damages for his short confinement. The defendants are the judges of the court who ordered the plaintiff confined under the provisions of the challenged statutes, the sheriff and the jailer who executed the order of the court in confining the plaintiff temporarily, and the director of the Admin-

---

1. N.C.Gen.Stats. §§ 6–49, 6–50, which are statutes of statewide application. At the time of Fowler's incarceration, § 6–49 provided in relevant part:

In all criminal actions in any court, if the defendant is acquitted, nolle prosequi entered, or judgment against him is arrested, or if the defendant is discharged from arrest for want of probable cause, the costs, including the fees of all witnesses whom the judge, court or justice of the peace before whom the trial took place shall certify to have been proper for the defense and prosecution, shall be paid by the prosecutor, whether marked on the bill or warrant or not, whenever the judge, court or justice is of the opinion that there was not reasonable ground for the prosecution, or that it was not required by the public interest.
N.C.Gen.Stats. § 6–49 (Repl. Vol. 1969).
Also, § 6–50 provided:
Every such prosecutor may be adjudged not only to pay the costs, but he shall also be imprisoned for the nonpayment thereof, when the judge, court, or justice of the peace before whom the case was tried shall adjudge that the prosecution was frivolous or malicious.
N.C.Gen.Stats. § 6–50 (Repl. Vol. 1969).
These statutes were amended in 1971 so that incarceration may only be imposed when the nonpayment of costs is willful. N.C.Gen.Stats. § 6–50 (Repl. Vol. 1969), as amended (Supp. 1971).

istrative Office of the Courts of North Carolina. The plaintiff requested the convening of a three-judge court to hear his constitutional attack on the statutes. The district court, 340 F.Supp. 168, denied the request and proceeded to dismiss the complaint.

We affirm.

The plaintiff's connection with the statutes of which he complains in this action began by his procuring the issuance of a warrant against a Mrs. Gentry, charging her with the theft of his watch. When subpoenaed to testify at Mrs. Gentry's trial, he appeared and asked that the charges be dismissed. The Court dismissed the charges and without a hearing assessed costs against him under the terms of the statutes, whose validity he attacks. Claiming inability to pay, he was placed in the county jail by order of the court. The next day a relative paid the costs and he was released. He thereupon filed this action. He makes no claim that he contemplates now or in the future procuring the prosecution of any person in North Carolina —certainly not any prosecution for which a finding of want of "reasonable ground for the prosecution" could be made. So far as the present prospects of the plaintiff appear, the enforcement of the statutes assailed by him presents no present or even likely threat of harm or injury to him. By his action, it is rather plain he is not seeking protection against any real probability of present or future enforcement of the statutes against him, but seeks to express his resentment at their past use against him on the occasion when he procured a prosecution, the good faith of which the trial court, without hearing, found lacking.

■ We may quickly dispose of plaintiff's claim for damages. It is plainly without merit. The defendants were cloaked with immunity. Pierson v. Ray (1967) 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. Such immunity, however, does not extend to plaintiff's action for injunctive and declaratory relief under Section 1983, 42 U.S.C. Littleton

v. Berbling (7th Cir., 1972), 468 F.2d 389. We are of opinion, however, that the district court correctly dismissed these aspects of plaintiff's action for lack of standing.

■ Standing is not a procedural issue in the exercise of federal judicial power. Article III, Section 2 of the Constitution limits the judicial power of federal courts to the adjudication of "cases" or "controversies". The existence of a case or controversy within this constitutional concept "depends upon whether the persons seeking relief have alleged a sufficient personal stake in the outcome to assure that the court will be called upon to resolve real issues between genuine adversaries rather than merely to give advisory opinions with respect to abstract or theoretical questions." Abele v. Markle (2d Cir. 1971) 452 F.2d 1121, 1124. Specifically, "the constitutionality of laws may be challenged only by those litigants who will suffer some actual or substantial injury from their enforcement, as distinguished from a remote, general, or hypothetical possibility of harm." Id.

These principles were given practical application by the Supreme Court in the recent decision of Roe v. Wade (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, where the standing of a non-pregnant wife, who had received medical advice that pregnancy would endanger her health, to maintain an attack on a state anti-abortion statute was at issue. The Court said, in denying standing: "This very phrasing of the Does' position reveals its speculative character. Their alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. Any one or more of these several possibilities may not take place and all may not combine. In the Does' estimation, these possibilities might have some real or imagined impact upon their marital happiness. But we are not prepared to say that the bare allegation of so indirect an injury is sufficient to present an actual case or con-

troversy." (at 128, 93 S.Ct. at 714). The same conclusion was reiterated by Mr. Justice Marshall in Linda R. S. v. Richard D. and Texas et al., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536, 1973: "The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Earlier in Laird v. Tatum (1972) 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154, involving a claim of a preferred First Amendment right, the Court emphasized that, "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.' "

It is true that there are some instances in which standing will be upheld even though the complainant may not allege present harm. Those instances, however, are limited to situations where, because of the complainant's vocation or some other unique condition, the threat of future prosecution of the plaintiff represents a real present and future threat or hazard. That was the situation of the physician in Doe v. Bolton (1973) 410 U.S. 179, 93 S.Ct. 739, 35 L. Ed.2d 201, filed January 22, 1973, who in his normal practice, it would be reasonably anticipated, would be consulted by pregnant women patients seeking an abortion. 410 U.S., at 187–188, 93 S.Ct., at 745–746. It was, also, the situation in Wulp v. Corcoran (1st Cir. 1972) 454 F.2d 826, where plaintiffs engaged in the sale and distribution of newspapers and other printed material, although not yet arrested or threatened, were threatened with prosecution under a permit ordinance.

Applying these rules to the facts of this case, it would appear plain that the plaintiff lacks standing to put in issue the constitutionality of the North Carolina statutes. He is under no present threat of prosecution under these statutes. The likelihood that he will run afoul of them in the future is remote and speculative in the extreme. It can be safely assumed—and he does not allege otherwise—that he does not contemplate either presently or in the future the institution of a prosecution in North Carolina. Unlike the physician in *Bolton*, he is not engaged in a business in connection with which it is reasonably to be anticipated he will be called on to prosecute in North Carolina some individual without probable cause. Similarly, unlike the situation faced by the complainants in *Wulp*, he is not threatened with a present prosecution under the statutes he challenges. The most he can contend is that the statutes represent an intangible "chill" on his possible exercise of a right to prosecute under North Carolina law. But the mere fact that the statutes may chill in some indefinable way his urge to prosecute is of no moment in the absence of any real likelihood that he has or will have reason to prosecute some one in North Carolina. As Mr. Justice Black in Younger v. Harris (1971) 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669, summed it up: feelings of "inhibition", without any claim of a threat of prosecution, or that a prosecution was likely, or even remotely possible, are entirely too "imaginary or speculative" to establish standing.[2] (401 U. S. at 42, 91 S.Ct. 746).

The mere fact that earlier the plaintiff was caught in the net of the challenged statutes gives him no standing. His earlier encounter with the statutes has become moot. The costs assessed have been paid, not by the complainant but by others. He is no longer restrained. He is plainly not subject to any "specific present objective harm". His claim to relief in this proceeding relates not to a present claim of harm but

---

2. This analysis of *Younger* follows the language of the Court in Wulp v. Corcoran, *supra*, at 830 of 454 F.2d.

to a "chill" resulting from the possible future enforcement of the statutes.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

Has Fowler "established that 'personal stake in the outcome of the controversy,' Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L.Ed.2d 663 (1962), that insures that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution,' Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), and Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L. Ed.2d 636 (1972)?" Roe v. Wade, 410 U.S. 113, 123, 93 S.Ct. 705, 712, 35 L. Ed.2d 147 (1973). I think so. Fowler has been incarcerated pursuant to the statute in question in the past and may be again should he execute another criminal warrant.

This case is not like Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971) where:

> Not a single one of the citizens who brought this action had ever been prosecuted, charged, or even arrested under the particular intimidation statute which the court below held unconstitutional. . . . Rather, it appears from the allegations that those who originally brought this suit made a search of state statutes and city ordinances with a view to picking out certain ones that they thought might possibly be used by the authorities as devices for bad-faith prosecutions against them.

401 U.S. at 80–81, 91 S.Ct. at 760.

That Fowler is not now being prosecuted or imminently threatened with prosecution is not dispositive of this case. Kirkland v. Wallace, 403 F.2d 413, 415 n.4 (5th Cir. 1968). Fowler can "present a justiciable controversy and . . . have standing despite the fact that the record does not disclose that [he] has been prosecuted, or threatened with prosecution, for violation of the State's . . . statutes." Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). The majority opinion states that standing will be upheld, absent present harm, only in those cases where because of the plaintiff's vocation or other unique condition there is a real and present hazard. However, that is the rule where one person is found to have standing to assert the rights of another, Eisenstadt v. Baird, 405 U.S. 438, 445–446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and is not applicable here where Fowler challenges the statute in his own right.

Because of Fowler's past involvement with the statute, I think he is a proper party to request an adjudication of the issue. *See* Flast v. Cohen, 392 U.S. 83, 100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

That the doctrine of abstention may be applicable, *e. g.,* Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not relevant to the standing issue. Arrington v. City of Fairfield, 414 F.2d 687, 691 (5th Cir. 1969). Indeed, such an equitable decision is beyond the power of a single judge and is to be determined by the three-judge court. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L. Ed.2d 794 (1962); Abele v. Markle, 452 F.2d 1121, 1126 (2d Cir. 1971).

Therefore, for the reasons stated above, I would reverse the district court and remand with directions to request the convening of a three-judge court.